UNITED STATES of America,
Plaintiff-Appellee,

v.

Tom R. ROGERS, Defendant-Appellant.

SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff-Appellee,

v.

CAPITAL OIL CORPORATION, etc.,
et. al., Defendants,

Tom R. Rogers, Defendant-Appellant.

Nos. 75–3010, 75–3098
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 8, 1976.
Rehearing Denied July 30, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Emmett Colvin, Gary D. Jackson, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., William O. Wuester, Asst. U. S. Atty., Robert L. Yeager, III, Cecil S. Mathis, David Reed, Sp. Atty., Securities & Exchange Comm., Fort Worth, Tex., Michael J. Stewart, Martin S. Berglas, Securities & Exchange Comm., Washington, D. C., for the United States and S.E.C.

Before GODBOLD, DYER and CLARK, Circuit Judges.

PER CURIAM:

■ In No. 75-3098, appellant Rogers seeks to have set aside a consent decree into which he entered enjoining him from various activities in the securities field. He claims that the decree was invalid because his counsel was ineffective, alleging that his attorneys (1) were representing codefendants with conflicting interests, and (2) did not advise him that criminal liability might result from defying the consent decree. Rogers relies primarily on Sixth Amendment standards governing the constitutional right to effective counsel in criminal cases. The consent decree, however, was rendered in a civil proceeding, *SEC v. MacElvain*, 417 F.2d 1134, 1138 (CA5, 1969), *cert. denied*, 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970), where such stringent standards do not apply. Cf. *SEC v. Hughes*, 481 F.2d 401, 403 (CA2, 1973). Putting aside precedents governing the constitutional law of criminal procedure, then, we see no basis for overturning the injunction. The conflict of interest here was at most a potential one, since no actual prejudice was shown. And Rogers was chargeable with knowledge that direct disobedience of the consent decree could lead to contempt sanctions.

■ Even if we were to agree that the consent decree was improperly rendered, the conclusion could not help Rogers in No. 75-3010, wherein he appeals from his contempt conviction. Under well-settled principles, the validity of the order he disobeyed was not open to question in the contempt proceeding. *U. S. v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *U. S. v. Leyva*, 513 F.2d 774, 776 (CA5, 1975).

■ The second argument Rogers advances in the criminal case is that the government should have brought him to trial under the procedures generally applicable to securities law violators rather than under the more abbreviated procedures of the federal contempt statute, 18 U.S.C. § 401. Insofar as this contention rests on constitutional grounds, it has been rejected in *U. S. v. Bukowski*, 435 F.2d 1094, 1099-102 (CA7), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1970), and we see no need to amplify upon the Seventh Circuit's thorough analysis. Insofar as Rogers' argument consists in an assertion that the procedural steps of Title 15 (including reference to the Justice Department and indictment by a grand jury) supersede or take precedence over the procedures associated with the contempt statute, it is again without merit. Consent decrees would not be worth very much if every violation of them had to be prosecuted de novo as a violation of the securities acts. We think it is safe to conclude that Congress did not intend for enforcement of the securities acts to be confined in this way.

The judgments appealed from are each AFFIRMED.