IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-168-CV





MARY L. SMITH AND DAMON INTERESTS, INC.,



 APPELLANTS


vs.





EDWARD R. ENGLEKING, SUCCESSOR TO STEPHEN S. DURISH, 


RECEIVER OF FEDERAL TITLE COMPANY,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 475,477, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING


 




PER CURIAM

 Appellants Mary L. Smith (Smith) and Damon Interests, Inc. (Damon) appeal from
a district court judgment in favor of appellee Edward R. Engleking, successor to Stephen S.
Durish, Receiver of Federal Title Company (Federal). We will affirm the judgment.

 Our recitation of the facts is drawn from deemed admissions. (1) Federal is a Texas
corporation authorized to issue title insurance policies for Ticor Title Insurance Company and
other companies. Damon owned at least ninety-eight percent (98%) of Federal's stock and Smith
owned all of Damon's stock. Smith was the president and a director of both Federal and Damon. 
She was also licensed as a title insurance and escrow agent by the Texas Board of Insurance.

 As part of its business, Federal, through Smith, participated in real estate
transactions as the escrow agent. Smith received money from transaction participants, to be held
for the benefit of other transaction participants or for the benefit of others designated by the
transaction participants. Smith was obligated to deposit these escrow funds in Federal's escrow
account. As a title insurance agent, Federal was also contractually bound to remit to its
underwriters premiums for title insurance it issued. Federal collected the funds for the title
insurance premiums from the participants in the real estate transactions in which title insurance
policies were issued.

 The State began delinquency proceedings against Federal and subsequently
appointed Stephen S. Durish as receiver of Federal. Tex. Ins. Code Ann. art. 21.28 (West Supp.
1992). The receiver reviewed Federal's accounts and found that the escrow account contained
insufficient funds to satisfy the escrow agent's obligations and that Smith had failed to remit title
insurance premiums to the underwriters in violation of agency contracts. The receiver was liable
for those shortfalls that qualified as "covered claims." (2) The receiver sued Smith and Damon to
recover the funds for which it was liable, alleging: (1) that Smith was the alter ego of Damon;
(2) breach of contract, misappropriation of trust funds, and breach of fiduciary duty; (3)
negligence; (4) fraud and constructive trust; and (5) money had and received. The receiver also
pleaded for attorney's fees and costs of receivership. Smith, represented herself pro se, and
Damon, represented pro se by its president Robert Smith, (3) answered. Smith later filed a motion
for continuance.

 Trial was to the court. Edward R. Engleking appeared as successor to the receiver
of Federal. Smith did not appear and wholly defaulted. Robert Smith appeared for Damon. 
After hearing the evidence the trial court rendered judgment in favor of the receiver. Smith and
Damon appeal from the trial court's judgment.



DISCUSSION


 Appellants' first two points of error complain that the trial court erred in denying
Smith's motion for continuance and rendering a post-answer default judgment for the reason that
(1) she was denied the opportunity to appear and defend herself and confront her accusers as
provided under the fourteenth amendment to the United States Constitution and Tex. Const. art.
I, § 19; and (2) her motion was well founded, and complied with Tex. R. Civ. P. 251 and 252. 
The grant or denial of a motion for continuance is within the trial court's discretion and will not
be disturbed on appeal absent a clear abuse of discretion. State v. Crank, 666 S.W.2d 91, 94
(Tex. 1984), cert. denied, 469 U.S. 833 (1984).

 This cause was set for trial on December 12, 1991. Smith filed the motion for
continuance on December 11, 1991; the certificate of service recites that she served the motion
on opposing counsel on December 10, 1991. The record does not reflect that the motion was set
for a hearing. See Tex. R. Civ. P. 21. Although appellants complain that the trial court denied
the motion for continuance, the record does not reflect that the trial court heard or ruled on the
motion. Appellants did not object to the trial court's failure to hear the motion or request a ruling
on the motion. Tex. R. App. P. 52(a). Furthermore, Smith did not file a motion to set aside the
default judgment and for new trial. (4) See Tex. R. Civ. P. 324(b). Accordingly, appellants have
not preserved their complaint for review. Tex. R. Civ. P. 324(b); Tex. R. App. P. 52(a); Lynch
v. Bank of Dallas, 746 S.W.2d 24, 24-25 (Tex. App.--Dallas 1988, writ denied).

 Furthermore, the motion does not comply with the applicable rules of civil
procedure because it is not verified. Tex. R. Civ. P. 251. A motion for continuance, affidavit
and durable power of attorney were filed on December 11, 1991. Smith did not sign the motion
or affidavit, and the durable power of attorney attached to the motion for continuance does not
include the principal's signature page. Robert Smith signed the motion and affidavit as attorney-in-fact for Mary L. Smith. Apparently, Robert Smith relied on the durable power of attorney for
his authority to do so. However, since the durable power of attorney does not bear Smith's
signature, it conferred no authority on Robert Smith to sign the motion or affidavit as her
attorney-in-fact. (5) See Tex. Prob. Code Ann. § 36A(c) (West Supp. 1992) (principal must sign
durable power of attorney). Generally, a trial court is presumed to have correctly exercised its
discretion when it denies a motion that fails to comply with the rules governing continuances. 
Greenstein, Logan & Co. v. Burgess Marketing Inc., 744 S.W.2d 170, 179 (Tex. App.--Waco
1987, writ denied).

 Finally, the record does not reflect that Smith presented the motion to the trial court
or was prevented from doing so. The motion for continuance recites that: (1) Smith is under
Federal Bureau of Prisons restraint in the Federal Prison Farm at Bryan, Texas "until sometime
in the future"; (2) she is representing herself pro se; and (3) if trial is held on December 12, 1991,
she will effectively be denied counsel for cross-examination and the benefit of her own testimony. 
The affidavit recites that Smith is unable to afford an attorney to represent her. Since Smith did
not swear to the statements in the affidavit, she made no showing that she could not retain counsel
to defend her and present her motion. (6) A trial court is under no duty to consider a motion for
continuance not called to its attention by the party requesting relief. Guidry v. Massey, 572
S.W.2d 47, 49 (Tex. Civ. App.--Houston [1st Dist.] 1978, no writ). Appellants' first two points
of error are overruled.

 In points of error three and four, appellants complain of the trial court's rendition
of judgment against Damon. The trial court held Damon liable for Smith's actions on the basis
that Smith was the alter ego of Damon. See Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex.
1986) (alter ego applies when there is such unity between corporation and individual that
separateness of corporation ceases). Appellants do not assert that the trial court erred in rendering
judgment against Smith.

 In their third point of error, appellants assert that the evidence is insufficient to
support a finding that Smith was the alter ego of Damon. Findings of fact and conclusions of law
were not requested or filed. In a case where no findings of fact or conclusions of law are
requested or filed, all necessary findings will be implied in support of the judgment. These
implied findings may be challenged on appeal by insufficient-evidence points the same as jury
findings or trial court findings. Burnett v. Motyka, 610 S.W.2d 735, 736 (Tex. 1980).

 When reviewing the factual sufficiency of the evidence, we must consider and
weigh all the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool
v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); see generally William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 Alter ego is a basis for disregarding the corporate fiction. (7) Alter ego applies when
there is such unity between corporation and individual that the separateness of the corporation has
ceased and holding only the corporation liable would result in injustice. Castleberry v. Branscum,
721 S.W.2d 270, 272 (Tex. 1986). In the requests for admissions served on the appellants,
request for admission number twenty-four states that Smith is the alter ego of Damon. Whether
Smith is Damon's alter ego is a fact question. Castleberry, 721 S.W.2d at 277 (different bases
for disregarding the corporate fiction involve question of fact). Therefore, a request for an
admission that Smith is the alter ego of Damon is a permissible request within the scope of Rule
169. Tex. R. Civ. P. 169; see also Tex. R. Civ. P. 166b (parties may obtain discovery regarding
any matter which is relevant to the subject matter in the pending action). Because appellants did
not timely file answers to the requests for admissions, this matter is deemed admitted. Thus, the
fact that Smith is Damon's alter ego is conclusively established as to appellants. See footnote 1,
supra. The evidence is sufficient to support the trial court's implied finding that Smith was
Damon's alter ego. Appellants' third point of error is overruled.

 In their fourth point of error, appellants complain that the trial court erred in
rendering judgment against Damon based on the theory of reverse piercing. See Zahra Spiritual
Trust v. United States, 910 F.2d 240, 243-44 (5th Cir. 1990) (ultimate goal in reverse piercing
unique; rather than merely disregarding corporate fiction and holding shareholders accountable,
court treats corporation and individual as one and the same to hold corporation liable for
individual obligations). At least one Texas court has used alter ego as a basis to disregard the
corporate fiction and reach corporate assets. American Petroleum Exch., Inc. v. Lord, 399
S.W.2d 213, 217 (Tex. Civ. App.--Ft. Worth 1966, writ ref'd n.r.e.) (court disregarded corporate
fiction to enforce against corporation's property judgment against individual who owned great
majority of corporate stock and was trustee for daughter who owned most of remainder, and
individual had at all material times treated corporation as alter ego); see Zisblatt v. Zisblatt, 693
S.W.2d 944, 952 (Tex. App.--Ft. Worth 1985, writ dism'd); Dillingham v. Dillingham, 434
S.W.2d 459, 462 (Tex. Civ. App.--Ft. Worth 1968, writ dism'd).

 Appellants assert that to apply the theory of reverse piercing on a basis other than
alter ego is erroneous. An assumption that the finding as to alter ego is erroneous underlies
appellants' argument. As discussed under the previous point of error, the evidence supports an
implied finding that Smith is the alter ego of Damon. That implied finding entitled the trial court
to disregard the corporate fiction and to find Damon liable. American Petroleum Exch., Inc., 399
S.W.2d at 217. Accordingly, we overrule appellants' fourth point of error.

 The judgment of the trial court is affirmed.


[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: November 18, 1992

[Do Not Publish]

1. [1]  The receiver's first request for admissions was filed on March 6, 1990. The certificate of
service recites that the requests were served on the appellants by mailing them, via certified and
regular mail, on the same date. Appellants had thirty days from the date of service of the requests
to serve answers or objections to the requests. Tex. R. Civ. P. 169. Because the requests were
mailed, the appellants had until April 9, 1990, to serve their answers or objections. Tex. R. Civ.
P. 21a. Appellants served their answers by placing them in the mail on April 19, 1990. 
Appellants did not timely answer the requests. Therefore, the matters of which admissions are
requested are deemed admitted. Tex. R. Civ. P. 169. Appellants did not file any motion to
withdraw or amend the admissions. Therefore, the matters thus admitted are conclusively
established as to the appellants. Id.
2. [2]  The Insurance Code definition of "covered claim" applicable to a shortage in an escrow
account of an impaired agent recites:


 "Covered claim" is an unpaid claim: 


(iv) against trust funds or an escrow account of an impaired agent which arises
due to a shortage of those funds or in that account and which shall be paid
only from funds derived from guaranty fees and not from assessments. 


Texas Title Insurance Guaranty Act, Tex. Ins. Code Ann. art. 9.48, § 5(2)A(iv) (West Supp.
1992). The record does not reflect the date that Federal went into receivership. This definition,
however, has not been changed by amendment since its original inclusion in the Guaranty Act.
Compare Texas Title Insurance Guaranty Act, 70th Leg., R.S., ch. 1073, § 1, 1987 Tex. Gen.
Laws 3610, 3614, with Tex. Ins. Code Ann. art. 9.48, § 5(2)A(iv).
3. [3]  Robert Smith signed the answer in this capacity.
4. [4]  Damon filed a motion to set aside the judgment and for new trial.
5. [5]  We do not reach the question whether an attorney-in-fact may sign a sworn affidavit for the
affiant.
6. [6]  Smith also did not request that the court appoint an attorney to represent her. See Tex.
Gov't Code Ann. § 24.016 (West 1988); Sandoval v. Rattikin, 395 S.W.2d 889, 893-94 (Tex.
Civ. App.--Corpus Christi 1965, writ ref'd n.r.e.), cert. denied, 385 U.S. 901 (1966); Garcia v.
Ray, 556 S.W.2d 870, 872-73 (Tex. Civ. App.--Corpus Christi 1977, writ dism'd).
7. [7]  We disregard the corporate fiction when the corporate form has been used as part of a
basically unfair devise to achieve an inequitable result. Castelberry v. Branscum, 721 S.W.2d
270, 271 (Tex. 1986). The bases for disregarding the corporate fiction are: 


(1) when the fiction is used as a means of perpetrating fraud;


(2) where a corporation is organized and operated as a mere tool or business
conduit of another corporation:


(3) where the corporate fiction is resorted to as a means of evading an existing
legal obligation:


(4) where the corporate fiction is employed to achieve or perpetrate monopoly;


(5) where the corporate fiction is used to circumvent a statute; and


(6) where the corporate fiction is relied upon as a protection of crime or to justify
wrong.


Id. at 272. Inadequate capitalization is another basis for disregarding the corporate fiction. 
Castleberry, 721 S.W.2d at 272 n.3.