Opinion filed September
30, 2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00290-CV 

                                                    __________

 

 

                             BANS
PROPERTIES, L.L.C., Appellant 

        V. THE HOUSING
AUTHORITY OF THE CITY OF ODESSA AND

          ODESSA
REDEVELOPMENT PARTNERSHIP, LTD., Appellees

 



 

                                   On
Appeal from the 244th District Court

                                                             Ector
County, Texas

                                                  Trial
Court Cause No. C-126,852

 



 

                                                                  O
P I N I O N

 

            This
is a declaratory judgment action.  The trial court held that a contract between
the Housing Authority of the City of Odessa, Odessa Redevelopment Partnership,
Ltd., and Bans Properties, L.L.C. was null and void.  We affirm.

I.  Background
Facts

Odessa Housing Authority built and operated a multifamily, low-income,
rental housing project in Odessa known as the La Promesa Apartments.  It
contracted with the United States Department of Housing and Urban Development
and began receiving federal housing assistance payments.  In 1992, Odessa
Housing Authority applied for low-income housing tax credits.  The application
was successful, and Odessa Redevelopment, a Texas limited partnership, was
created to receive the tax credit allocation.  Because of the HUD contract and
the tax credit, Odessa Housing Authority and Odessa Redevelopment were required
to operate the property pursuant to various federal statutes and regulations.  If
they failed to do so, one possible consequence was having to recapture all or a
portion of the tax credits.

In 2007, Odessa Redevelopment and Odessa Housing Authority entered into a
contract with Bans Properties to sell the apartments.  The contract recited the
low-income housing tax credit.  Bans Properties agreed to operate the
apartments so as to maintain and preserve the tax credit, and its principals agreed
to indemnify the sellers if they were forced to recapture any tax credit.  All
parties agreed to cooperate and to use good faith and commercially reasonable
efforts to obtain HUD’s and the Texas Department of Housing and Community
Affairs’s approval of the transfer of ownership.[1] 
The parties agreed further that, if HUD or TDHCA did not approve the transfer,
the contract would become null and void. 

TDHCA refused to approve the sale because Bans Properties is a for-profit
entity and the tax credit had been allocated under a ten percent set aside
designated by the federal government for nonprofit entities.  Odessa
Redevelopment and Odessa Housing Authority advised Bans Properties of this but
said that the apartments could be sold to a nonprofit and that they were
working on alternative plans.  Bans Properties made arrangements to purchase a nonprofit
organization, but Odessa Redevelopment and Odessa Housing Authority declared
the contract void and filed this declaratory judgment action.

II.  Issues

Bans Properties contends that the trial court erred by finding that the
contract was void because it raised fact questions on its affirmative defenses
of excuse, waiver, and repudiation.

III.  Summary Judgment

Odessa Redevelopment and Odessa Housing Authority moved for summary
judgment on the enforceability of the contract.  They argued that, as a matter
of law, the contract was null and void pursuant to its own terms because
regulatory approval of the transfer was a condition precedent and because this
approval was not obtained.  Bans Properties did not dispute the lack of
regulatory approval but responded that the contract was not void because
regulatory approval was a covenant and not a condition and, alternatively, that
summary judgment was inappropriate because of its affirmative defenses of legal
excuse, waiver by conduct, and repudiation.  The trial court found that the
contract was null and void, and it granted the motion for summary judgment.[2]

A.    
Standard of Review.

The standard of review for traditional summary judgment motions is well settled.[3] 
Questions of law are reviewed de novo.  St. Paul Ins. Co. v. Tex. Dep’t of
Transp., 999 S.W.2d 881 (Tex. App.—Austin 1999, pet. denied).  To determine
if a fact question exists, we must consider whether reasonable and fair-minded
jurors could differ in their conclusions in light of all the evidence
presented.  Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754
(Tex. 2007).  When a party contends that summary judgment is improper because
of an affirmative defense, it must do more than merely plead that defense.  Kirby
Exploration Co. v. Mitchell Energy Corp., 701 S.W.2d 922, 926 (Tex.
App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.).  An affirmative defense will
prevent the granting of a summary judgment only if the defendant supports each
element of the affirmative defense by summary judgment evidence. Tesoro
Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 124 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). This requires evidence sufficient
to establish at least a fact question on each element.  “Moore” Burger, Inc.
v. Phillips Petroleum Co., 492 S.W.2d 934, 936-37 (Tex. 1972).

B.    
Excuse.

Bans Properties concedes that regulatory approval was a condition precedent. 
Because conditions precedent are events that must be performed before a right
accrues to enforce a contract, Hohenberg Bros. Co. v. George E. Gibbons
& Co., 537 S.W.2d 1, 3 (Tex. 1976), the general rule is that Bans
Properties’ failure to obtain regulatory approval released Odessa Redevelopment
and Odessa Housing Authority from any further contractual obligation.  Bans
Properties contends, however, that its affirmative defenses preclude
application of the general rule.

When one contracting party prevents another from performing a condition
precedent, performance is excused.  Dorsett v. Cross, 106 S.W.3d 213,
217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  Bans Properties
contends that it was excused from obtaining regulatory approval because of an e-mail
from Bernadine H. Spears, Executive Director of Odessa Housing Authority.  In
this e-mail, Spears stated:

As a result of the
meeting it has been determined that we cannot sell LaPromesa (as per the TDHCA
representative) to a For Profit Entity because the Tax Credits that we received
in 1994 were awarded under the Non Profit Set Aside (although I have not had
direct contact with you I did relay this information to Alex), but it can be
sold to another Non Profit and we have two years left under the TDHCA
Compliance requirements.  Now, we are in the process of working on alternative
plans (B, C) that is going to take some serious thinking through time to
determine the best approach so don’t give up so quickly we are all learning and
I guarantee you that we will be victorious in the end.

 

Bans Properties
argues that this constitutes an excuse of its obligation to obtain regulatory
approval because Spears promised to work on an alternative means to transfer
ownership and, in reliance upon her promise, it found an individual willing to
sell his 501(c)(3) entity.  Bans Properties complains that the subsequent
decision to terminate the transaction was inconsistent with this promise and
that it was denied the opportunity to obtain regulatory approval.

            Spears’s
e-mail is no evidence of excuse.  There is no question that preserving the tax
credit was important to all and, thus, the need for regulatory approval.  Bans
Properties’ contractual obligation was to obtain approval of the transfer of
ownership to itself.  To establish excuse, it must show that Odessa
Redevelopment and Odessa Housing Authority prevented it from obtaining this approval. 
Bans Properties’ argument, however, is that it was prevented from obtaining
regulatory approval of a transfer to a subsequently acquired 501(c)(3).  

This
contention raises standing concerns.  It is understandable that the principals
were focused on consummating the transaction and that, so long as an entity
they controlled was the purchaser, the contract’s purpose would be satisfied from
their perspective. We have serious 
doubts that Bans Properties could own a 501(c)(3) organization.[4] 
Its principals could, perhaps, acquire control of an existing 501(c)(3), but
that entity would be a new purchaser and, therefore, selling the apartments to
it would require a new contract.  In that instance, any breach of contract
action would belong to the 501(c)(3) entity and not Bans Properties.  See
Interstate Contracting Corp. v. City of Dallas, 135 S.W.3d 605, 618 (Tex.
2004) (a party to a contract has standing to maintain a suit on the contract).[5]

The
issue is not whether some other agreement could have been consummated.  The
question before the trial court was whether the existing contract, which
identified Bans Properties as the purchaser, was null and void.  To establish
excuse as an affirmative defense to the lack of regulatory approval, Bans
Properties was required to produce evidence that Odessa Redevelopment or Odessa
Housing Authority did something that prevented it from being approved. 
Spears’s e-mail does not evidence that either entity prevented Bans Properties
from securing regulatory approval or otherwise played any part in TDHCA’s
decision.  Moreover, the failure to give Bans Properties more time to acquire a
501(c)(3) does not create a fact question on excuse because, even if we assume
that it could, we have been provided no authority for the proposition that a
501(c)(3) owned by a for-profit entity was eligible for regulatory approval.  

            Bans
Properties also complains that Odessa Redevelopment and Odessa Housing
Authority did not cooperate, and it references instances in which its calls
were ignored or it was treated impolitely.  It did not, however, offer any
evidence that their conduct played any part in TDHCA’s decision, such as not
providing documentation or information that Bans Properties needed for its
application.  Cf. Sargent v. Highlite Broadcasting Co., 466 S.W.2d 866,
867 (Tex. Civ. App.—Austin 1971, no writ) (purchaser was excused from securing
regulatory approval of purchase because seller’s president refused to execute
the documents necessary to obtain that approval).  

Bans Properties also directs our attention to e-mails discussing
deadlines and to statements that HUD could waive a deadline or that Odessa
Redevelopment and Odessa Housing Authority would obtain any needed extension.  This
is no evidence of excuse because TDHCA’s decision to not approve the transfer
was not based upon any deadline; it was based upon Bans Properties’ status as a
for-profit entity.  The trial court did not err by finding that Bans Properties
failed to raise a fact question on excuse.

C.     Waiver by Conduct.

Waiver is the intentional relinquishment of a
known right or intentional conduct inconsistent with claiming that right.  Sun
Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987).  A
condition precedent may be waived, and waiver of a condition may be inferred
from a party’s conduct.  Ames v. Great S. Bank, 672 S.W.2d 447, 449
(Tex. 1984).  

            Bans Properties complains that Odessa
Redevelopment’s and Odessa Housing Authority’s conduct resulted in delays and
necessitated an extension of the closing date.  They may have waived their
right to insist upon performance by a particular deadline, but this is no
evidence that they waived Bans Properties’ obligation to obtain regulatory
approval of the transfer of ownership.  Bans Properties next asserts that
Odessa Redevelopment and Odessa Housing Authority were charged with knowledge
of the law and, therefore, with knowledge that they could not convey the
apartments to a for-profit entity.  Because they did not inform it of this
fact, Bans Properties contends that they have waived the necessity for
regulatory approval. Knowledge of the law is equally chargeable to both
parties.  But if Odessa Redevelopment or Odessa Housing Authority possessed
information that should have been shared but was not, that may be relevant to Bans
Properties’ cross-action.  It is not evidence of waiver.  The trial court did
not err by finding that Bans Properties failed to raise a fact question on
waiver.

            D. Repudiation.

            As a
general rule, performance is excused when a party to a contract prevents the
other from performing and, thereby, repudiates the contract.  Sage St.
Assocs. v. Northdale Constr. Co., 809 S.W.2d 775, 777 (Tex. App.—Houston
[14th Dist.] 1991), aff’d in part & rev’d & remanded in part on
other grounds, 863 S.W.2d 438 (Tex. 1993).  To constitute repudiation, a
party to a contract must absolutely and unconditionally refuse to perform the
contract without just excuse.  El Paso Prod. Co. v. Valence Operating Co.,
112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  When
one party repudiates a contract, the innocent party may treat the repudiation
as a breach or continue to perform under the contract and await the time of the
agreed-upon performance.  Ingersoll-Rand Co. v. Valero Energy Corp., 997
S.W.2d 203, 211 (Tex. 1999).  

Bans
Properties argues that Odessa Redevelopment and Odessa Housing Authority have
refused to perform their obligations under the agreement and, therefore, that
the doctrine of repudiation prevents rendition of summary judgment.  However,
it cites no evidence that either entity was contractually required to do
something that it did not do.  Bans Properties assumes that, if it acquired a
501(c)(3) organization, it was entitled to an opportunity to secure regulatory
approval of a transfer of ownership to that entity.  The contract, however,
contains no such provision.  The trial court did not err by finding that Bans
Properties failed to raise a fact question on repudiation.

IV.  Conclusion

Bans Properties did not raise a fact question on each element of any
affirmative defense.  The trial court, therefore, did not err when it found
that, as a matter of law, the contract was null and void for lack of regulatory
approval.  Bans Properties’ issues are each overruled, and the judgment of the
trial court is affirmed.

 

            

RICK STRANGE

                                                                                    JUSTICE

 

September 30,
2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Bans Properties was also required to obtain the
approval of the Bank of New York Trust Company, which was serving as trustee
under a deed of trust and trust indenture.  That approval is not germane to the
issues raised by this appeal.

 





                [2]The motion was actually a partial motion for summary
judgment.  Bans Properties has counterclaims that were not addressed by the
motion.  The trial court severed the declaratory judgment cause of action, and
its ruling became a final, appealable order.

 





                [3]Bans Properties has included both traditional and
no-evidence summary judgment arguments in its brief.  Odessa Redevelopment and
Odessa Housing Authority argued that the contract was null and void because
neither HUD nor TDHCA approved of the transfer.  They argued alternatively that
Bans Properties could produce no evidence of HUD or TDHCA approval.  Because it
is undisputed that no regulatory approval was obtained, we will treat the
motion as a traditional summary judgment motion.





                [4]To qualify for tax exempt status under 501(c)(3), an
organization must serve exclusively a public rather than a private interest,
and the net earnings of the organization must not inure to a private
shareholder or individual.  26 U.S.C. § 501(c)(3).  A private shareholder or
individual is a person having a personal or private interest in the activities
of the organization. 26 C.F.R. § 1.501(a)–1(c).  It is difficult to
envision how Bans Properties’ acquisition of a 501(c)(3) is consistent with
these provisions.  

 





                [5]We are cognizant that a limited liability company
member may have an individual action against a defendant for a claim that the
defendant breached a contractual duty owed to them individually and to the
possibility of a member bringing a derivative suit on behalf of the LLC, see
American Heritage, Inc. v. Nevada Gold & Casino, Inc., 259 S.W.3d 816,
820 (Tex. App.—Houston [1st Dist.] 2008, no pet.), but because Bans Properties’
principals are not parties and because we do not hold that Bans Properties lacked
standing, we need not address this further.