**Opinion filed September 30, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00290-CV

_____

### BANS PROPERTIES, L.L.C., Appellant

### V.

### THE HOUSING AUTHORITY OF THE CITY OF ODESSA AND ODESSA REDEVELOPMENT PARTNERSHIP, LTD., Appellees

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-126,852**

### O P I N I O N

This is a declaratory judgment action. The trial court held that a contract between the Housing Authority of the City of Odessa, Odessa Redevelopment Partnership, Ltd., and Bans Properties, L.L.C. was null and void. We affirm.

### I. *Background Facts*

Odessa Housing Authority built and operated a multifamily, low-income, rental housing project in Odessa known as the La Promesa Apartments. It contracted with the United States

Department of Housing and Urban Development and began receiving federal housing assistance payments. In 1992, Odessa Housing Authority applied for low-income housing tax credits. The application was successful, and Odessa Redevelopment, a Texas limited partnership, was created to receive the tax credit allocation. Because of the HUD contract and the tax credit, Odessa Housing Authority and Odessa Redevelopment were required to operate the property pursuant to various federal statutes and regulations. If they failed to do so, one possible consequence was having to recapture all or a portion of the tax credits.

In 2007, Odessa Redevelopment and Odessa Housing Authority entered into a contract with Bans Properties to sell the apartments. The contract recited the low-income housing tax credit. Bans Properties agreed to operate the apartments so as to maintain and preserve the tax credit, and its principals agreed to indemnify the sellers if they were forced to recapture any tax credit. All parties agreed to cooperate and to use good faith and commercially reasonable efforts to obtain HUD's and the Texas Department of Housing and Community Affairs's approval of the transfer of ownership.[1] The parties agreed further that, if HUD or TDHCA did not approve the transfer, the contract would become null and void.

TDHCA refused to approve the sale because Bans Properties is a for-profit entity and the tax credit had been allocated under a ten percent set aside designated by the federal government for nonprofit entities. Odessa Redevelopment and Odessa Housing Authority advised Bans Properties of this but said that the apartments could be sold to a nonprofit and that they were working on alternative plans. Bans Properties made arrangements to purchase a nonprofit organization, but Odessa Redevelopment and Odessa Housing Authority declared the contract void and filed this declaratory judgment action.

## II. *Issues*

Bans Properties contends that the trial court erred by finding that the contract was void because it raised fact questions on its affirmative defenses of excuse, waiver, and repudiation.

## III. *Summary Judgment*

Odessa Redevelopment and Odessa Housing Authority moved for summary judgment on the enforceability of the contract. They argued that, as a matter of law, the contract was null and void pursuant to its own terms because regulatory approval of the transfer was a condition

---

[1]Bans Properties was also required to obtain the approval of the Bank of New York Trust Company, which was serving as trustee under a deed of trust and trust indenture. That approval is not germane to the issues raised by this appeal.

2

precedent and because this approval was not obtained. Bans Properties did not dispute the lack of regulatory approval but responded that the contract was not void because regulatory approval was a covenant and not a condition and, alternatively, that summary judgment was inappropriate because of its affirmative defenses of legal excuse, waiver by conduct, and repudiation. The trial court found that the contract was null and void, and it granted the motion for summary judgment.[2]

## A. *Standard of Review.*

The standard of review for traditional summary judgment motions is well settled.[3] Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007). When a party contends that summary judgment is improper because of an affirmative defense, it must do more than merely plead that defense. *Kirby Exploration Co. v. Mitchell Energy Corp.*, 701 S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). An affirmative defense will prevent the granting of a summary judgment only if the defendant supports each element of the affirmative defense by summary judgment evidence. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). This requires evidence sufficient to establish at least a fact question on each element. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936-37 (Tex. 1972).

## B. *Excuse.*

Bans Properties concedes that regulatory approval was a condition precedent. Because conditions precedent are events that must be performed before a right accrues to enforce a contract, *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976), the general rule is that Bans Properties' failure to obtain regulatory approval released Odessa Redevelopment and Odessa Housing Authority from any further contractual obligation. Bans

---

[2]The motion was actually a partial motion for summary judgment. Bans Properties has counterclaims that were not addressed by the motion. The trial court severed the declaratory judgment cause of action, and its ruling became a final, appealable order.

[3]Bans Properties has included both traditional and no-evidence summary judgment arguments in its brief. Odessa Redevelopment and Odessa Housing Authority argued that the contract was null and void because neither HUD nor TDHCA approved of the transfer. They argued alternatively that Bans Properties could produce no evidence of HUD or TDHCA approval. Because it is undisputed that no regulatory approval was obtained, we will treat the motion as a traditional summary judgment motion.

Properties contends, however, that its affirmative defenses preclude application of the general rule.

When one contracting party prevents another from performing a condition precedent, performance is excused. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Bans Properties contends that it was excused from obtaining regulatory approval because of an e-mail from Bernadine H. Spears, Executive Director of Odessa Housing Authority. In this e-mail, Spears stated:

> As a result of the meeting it has been determined that we cannot sell LaPromesa (as per the TDHCA representative) to a For Profit Entity because the Tax Credits that we received in 1994 were awarded under the Non Profit Set Aside (although I have not had direct contact with you I did relay this information to Alex), but it can be sold to another Non Profit and we have two years left under the TDHCA Compliance requirements. Now, we are in the process of working on alternative plans (B, C) that is going to take some serious thinking through time to determine the best approach so don't give up so quickly we are all learning and I guarantee you that we will be victorious in the end.

Bans Properties argues that this constitutes an excuse of its obligation to obtain regulatory approval because Spears promised to work on an alternative means to transfer ownership and, in reliance upon her promise, it found an individual willing to sell his 501(c)(3) entity. Bans Properties complains that the subsequent decision to terminate the transaction was inconsistent with this promise and that it was denied the opportunity to obtain regulatory approval.

Spears's e-mail is no evidence of excuse. There is no question that preserving the tax credit was important to all and, thus, the need for regulatory approval. Bans Properties' contractual obligation was to obtain approval of the transfer of ownership *to itself*. To establish excuse, it must show that Odessa Redevelopment and Odessa Housing Authority prevented it from obtaining *this* approval. Bans Properties' argument, however, is that it was prevented from obtaining regulatory approval of a transfer to a subsequently acquired 501(c)(3).

This contention raises standing concerns. It is understandable that the principals were focused on consummating the transaction and that, so long as an entity they controlled was the purchaser, the contract's purpose would be satisfied from their perspective. We have serious

4

doubts that Bans Properties could own a 501(c)(3) organization.[4] Its principals could, perhaps, acquire control of an existing 501(c)(3), but that entity would be a new purchaser and, therefore, selling the apartments to it would require a new contract. In that instance, any breach of contract action would belong to the 501(c)(3) entity and not Bans Properties. *See Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 618 (Tex. 2004) (a party to a contract has standing to maintain a suit on the contract).[5]

The issue is not whether some other agreement could have been consummated. The question before the trial court was whether the existing contract, which identified Bans Properties as the purchaser, was null and void. To establish excuse as an affirmative defense to the lack of regulatory approval, Bans Properties was required to produce evidence that Odessa Redevelopment or Odessa Housing Authority did something that prevented *it* from being approved. Spears's e-mail does not evidence that either entity prevented Bans Properties from securing regulatory approval or otherwise played any part in TDHCA's decision. Moreover, the failure to give Bans Properties more time to acquire a 501(c)(3) does not create a fact question on excuse because, even if we assume that it could, we have been provided no authority for the proposition that a 501(c)(3) owned by a for-profit entity was eligible for regulatory approval.

Bans Properties also complains that Odessa Redevelopment and Odessa Housing Authority did not cooperate, and it references instances in which its calls were ignored or it was treated impolitely. It did not, however, offer any evidence that their conduct played any part in TDHCA's decision, such as not providing documentation or information that Bans Properties needed for its application. *Cf. Sargent v. Highlite Broadcasting Co.*, 466 S.W.2d 866, 867 (Tex. Civ. App.—Austin 1971, no writ) (purchaser was excused from securing regulatory approval of purchase because seller's president refused to execute the documents necessary to obtain that approval).

---

[4]To qualify for tax exempt status under 501(c)(3), an organization must serve exclusively a public rather than a private interest, and the net earnings of the organization must not inure to a private shareholder or individual. 26 U.S.C. § 501(c)(3). A private shareholder or individual is a person having a personal or private interest in the activities of the organization. 26 C.F.R. § 1.501(a)–1(c). It is difficult to envision how Bans Properties' acquisition of a 501(c)(3) is consistent with these provisions.

[5]We are cognizant that a limited liability company member may have an individual action against a defendant for a claim that the defendant breached a contractual duty owed to them individually and to the possibility of a member bringing a derivative suit on behalf of the LLC, *see American Heritage, Inc. v. Nevada Gold & Casino, Inc.*, 259 S.W.3d 816, 820 (Tex. App.—Houston [1st Dist.] 2008, no pet.), but because Bans Properties' principals are not parties and because we do not hold that Bans Properties lacked standing, we need not address this further.

Bans Properties also directs our attention to e-mails discussing deadlines and to statements that HUD could waive a deadline or that Odessa Redevelopment and Odessa Housing Authority would obtain any needed extension. This is no evidence of excuse because TDHCA's decision to not approve the transfer was not based upon any deadline; it was based upon Bans Properties' status as a for-profit entity. The trial court did not err by finding that Bans Properties failed to raise a fact question on excuse.

C. *Waiver by Conduct.*

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). A condition precedent may be waived, and waiver of a condition may be inferred from a party's conduct. *Ames v. Great S. Bank*, 672 S.W.2d 447, 449 (Tex. 1984).

Bans Properties complains that Odessa Redevelopment's and Odessa Housing Authority's conduct resulted in delays and necessitated an extension of the closing date. They may have waived their right to insist upon performance by a particular deadline, but this is no evidence that they waived Bans Properties' obligation to obtain regulatory approval of the transfer of ownership. Bans Properties next asserts that Odessa Redevelopment and Odessa Housing Authority were charged with knowledge of the law and, therefore, with knowledge that they could not convey the apartments to a for-profit entity. Because they did not inform it of this fact, Bans Properties contends that they have waived the necessity for regulatory approval. Knowledge of the law is equally chargeable to both parties. But if Odessa Redevelopment or Odessa Housing Authority possessed information that should have been shared but was not, that may be relevant to Bans Properties' cross-action. It is not evidence of waiver. The trial court did not err by finding that Bans Properties failed to raise a fact question on waiver.

D. *Repudiation.*

As a general rule, performance is excused when a party to a contract prevents the other from performing and, thereby, repudiates the contract. *Sage St. Assocs. v. Northdale Constr. Co.*, 809 S.W.2d 775, 777 (Tex. App.—Houston [14th Dist.] 1991), *aff'd in part & rev'd & remanded in part on other grounds*, 863 S.W.2d 438 (Tex. 1993). To constitute repudiation, a party to a contract must absolutely and unconditionally refuse to perform the contract without just excuse. *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). When one party repudiates a contract, the innocent party

may treat the repudiation as a breach or continue to perform under the contract and await the time of the agreed-upon performance. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999).

Bans Properties argues that Odessa Redevelopment and Odessa Housing Authority have refused to perform their obligations under the agreement and, therefore, that the doctrine of repudiation prevents rendition of summary judgment. However, it cites no evidence that either entity was contractually required to do something that it did not do. Bans Properties assumes that, if it acquired a 501(c)(3) organization, it was entitled to an opportunity to secure regulatory approval of a transfer of ownership to that entity. The contract, however, contains no such provision. The trial court did not err by finding that Bans Properties failed to raise a fact question on repudiation.

## IV. *Conclusion*

Bans Properties did not raise a fact question on each element of any affirmative defense. The trial court, therefore, did not err when it found that, as a matter of law, the contract was null and void for lack of regulatory approval. Bans Properties' issues are each overruled, and the judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

September 30, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7